**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | |
| **PAULETTE MARTIN,** | * | **Criminal No.: DKC-04-235** |
| **Petitioner.** | * | |

...oOo...

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
PETITION FOR RELIEF PURSUANT TO 18 U.S.C. SECTION 3582(c)**

## INTRODUCTION

The United States of America, by undersigned counsel, hereby responds to Petitioner's Amended Motion for Reduced Sentence under 18 U.S.C. § 3582(c)(1)(A)(i) or, in the Alternative, Section 404 of the First Step Act.  ECF No. 2001.  The government opposes the request, as Petitioner has not established extraordinary and compelling reasons for compassionate release. Additionally, Petitioner's request for a Section 404 reduction should also be denied, as the large quantity of narcotics Petitioner trafficked shows that no sentencing disparity needs correction here.

## BACKGROUND

From at least 1997 until her arrest in May 2004, Paulette Martin ("Petitioner") was the leader of an organization involving at least thirty other individuals that trafficked massive quantities of cocaine, cocaine base and heroin.  Presentence Report ("PSR") at ¶¶ 40-55.

Consequently, Petitioner was charged with fifty-seven counts of a sixty-two count Fifth Superseding Indictment.  *See* ECF No. 794.  Prior to trial, on June 6, 2006, the government filed a Notice of its Intention to Seek Enhanced Penalties under 21 U.S.C. § 851, which resulted in a

1

statutory penalty range of twenty years to life under 21 U.S.C. §§ 841(b)(1)(A) and 851 as to Count One.  ECF No. 842.

On August 31, 2006, after a forty-two day jury trial, Petitioner was found guilty of fifty-six counts: Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 846 (Count 1); Use of a Communications Device to Facilitate Narcotics Trafficking, in violation of 21 U.S.C. § 843(b) (Counts 3, 5, 7, 9, 11-13, 15, 17-24, 26-28, 30, 32, 35, 37, 39, 42, 44, 46-54, 57 and 58); Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 841 (Counts 14, 25, 29, 31, 33, 36, 38, 43 and 45); Possession with Intent to Distribute 50 Grams or More of Crack/Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) (Counts 8, 40 and 56); Possession with Intent to Distribute 500 Grams or More of Cocaine, in violation of 21 U.S.C. § 841(a)(1) (Counts 4, 10, 16 and 55); and, Possession with Intent to Distribute 5 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) (Count 62).[1]

At sentencing, the Court adopted the factual findings and advisory guideline applications in the Presentence Report without change.  Statement of Reasons ("SOR"), at I.A.  The Court found that Petitioner's trafficking involved more than 150 kilograms of cocaine, 1.5 kilograms of cocaine base, and 20 kilograms of heroin, which resulted in the maximum possible base offense level – 38 under U.S.S.G. § 2D1.1.  PSR at ¶ 61.  A two level adjustment was applied pursuant to U.S.S.G. § 2D1.1(b)(1) and U.S.S.G. § 1B1.3(a) because two of Petitioner's co-defendants were found guilty of possessing firearms in furtherance of a drug conspiracy.  PSR at ¶ 63.  A four level adjustment was applied because Petitioner was a leader of the conspiracy, pursuant to U.S.S.G. §3B1.1(a).  PSR at ¶ 65.  As a result, Petitioner's final offense level was 44.  PSR at ¶ 70.  When

---

[1]     Petitioner was found not guilty of Count 22, another charge of using a communications device to facilitate narcotics trafficking.   PSR at ¶ 2.

combined with a criminal history category of I, Petitioner's guidelines sentencing range was life.[2] PSR at ¶ 93; SOR at III.

On December 19, 2006, the Honorable Roger W. Titus sentenced Petitioner to life imprisonment as to Counts 1, 8, 40, 56, 4, 10, 16, 55 and 62; forty-eight months as to Counts 3, 5, 7, 9, 11-13, 15, 17-24, 26-28, 30, 32, 35, 37, 39, 42, 44, 46-54, 57 and 58; and three hundred sixty months as to Counts 14, 25, 29, 31, 33, 36, 38, 43 and 45, all concurrently.  ECF No. 1059, Judgment & Commitment Order, at 2.

Petitioner's conviction and sentence were affirmed on direct appeal by the Fourth Circuit Court of Appeals.  *United States v. Goodwin*, 452 F. App'x 239 (4th Cir. 2011).  The U.S. Supreme Court denied her petition for writ of certiorari.  *Martin v. United States*, 566 U.S. 955 (2012).

In February 2015, Petitioner filed a *pro se* motion for a sentence reduction under 18 U.S.C. § 3582(c)(2), seeking the benefit of Amendment 782, which was opposed by the government and denied by Judge Titus.  ECF Nos. 1755, 1806.  After protracted litigation, including two appeals, Petitioner's reduction was granted pursuant to an agreement by the parties.  ECF Nos. 1928, 1963. As a result, Petitioner's sentences on Counts 1, 8, 40, 56, 4, 10, 16, 55 and 62 were reduced from life imprisonment to 360 months, a sentence which fell at the bottom of her amended guidelines range of 360 months to life.  ECF No. 1963.

On May 16, 2020, Petitioner filed an Emergency Motion for Reduced Sentence under 18 U.S.C. § 3582(c)(1)(A)(i) or, in the Alternative, for Imposition of a Reduced Sentence pursuant to

---

[2]      All fifty-six counts were grouped pursuant to U.S.S.G. § 3D1.2(d) because they were committed in furtherance of the drug trafficking conspiracy charged in Count One.  PSR at ¶ 60. While the guidelines range for all counts were based on Count One, the guidelines range for Counts 3, 5, 7, 9, 11-13, 15, 17-24, 26-28, 30, 32, 35, 37, 39, 42, 44, 46-54, 57 and 58 became forty-eight months, pursuant to U.S.S.G. § 5G1.1(c)(1), which establishes the guidelines range as the statutorily authorized maximum sentence, if lower than the otherwise applicable guidelines range. PSR at ¶¶ 94, 98; SOR at III.  Pursuant to the same provision, the guidelines range for Counts 14, 25, 29, 31, 33, 36, 38, 43 and 45, became three hundred and sixty months. PSR at ¶ 95; SOR at III.

Section 404 of the First Step Act.  ECF No. 1985.  Subsequently, on June 2, 2020, the Bureau of Prisons ("BOP") transferred Petitioner to home confinement pursuant to the CARES Act, and the parties agreed that a stay of Petitioner's motion was appropriate.

On June 5, 2020, Petitioner filed an Amended Motion for Reduced Sentence under 18 U.S.C. § 3582(c)(1)(A)(i) or, in the Alternative, Section 404 of the First Step Act.  ECF No. 2001. Petitioner requests immediate release under 18 U.S.C. § 3582(c)(1)(A)(i), the compassionate release statute, or alternatively a reduction to 240 months under Section 404 of the First Step Act. Petitioner asserts that she is eligible for immediate release under "the criteria for compassionate release identified in U.S.S.G. § 1B1.13 commentary note 1(B) based on her age, deteriorated health, and successful completion of a majority of her sentence."  ECF No. 2001 at 11. Alternatively, Petitioner requests a sentence reduction under Section 404 for her cocaine base offenses.  *Id*. at 13.

First, the government opposes Petitioner's § 3582(c)(1)(A)(i) motion for compassionate release because she has not alleged extraordinary and compelling reasons for release, as she has been moved to home confinement and no longer faces any risk of contracting COVID-19 within a BOP facility.  Second, it is the government's position that Petitioner is not eligible for a Section 404 sentence reduction due the large quantity of narcotics involved in her offense, and alternatively, that any reduction should be denied as a matter of discretion.

## I.  Petitioner's Motion for Compassionate Release Should be Denied.

Because Petitioner has not alleged extraordinary and compelling reasons for relief, the Court should deny Petitioner's request for compassionate release.

### A.  Legal Framework

Under 18 U.S.C. § 3582(b), the district court has only limited authority to modify a final

sentence. *Dillon v. United States*, 560 U.S. 817, 824-25 (2010) (noting that under Section 3582, the Court generally "may not modify a term of imprisonment once it has been imposed"); *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial change of heart") (internal quotation omitted); *United States v. Brown*, RDB-16-553, at 2 (D. Md. Mar. 26, 2020) (holding that the Court "may not modify the sentence imposed […] unless certain limited circumstances arise or as permitted under Rule 35 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3582(c)"). Section 3582(c)(1)(A)(i), commonly termed the "compassionate release" provision, provides one such exception by permitting courts to reduce a previously imposed term of imprisonment upon finding that "extraordinary and compelling reasons" exist for doing so, consistent with the applicable policy statements of the Sentencing Commission.

### 1.  18 U.S.C. § 3582(c)(1)(A)(i)

The compassionate release provision of § 3582(c)(1)(A), adopted as part of the Sentencing Reform Act of 1984, originally permitted judicial relief only upon a motion by the Director of the Bureau of Prisons ("BOP"). Previously, a defendant could only petition the BOP Director for compassionate release, who could then move the district court for compassionate release. *United States v. Webster*, 2020 WL 618828, at *1 (E.D. Va. Feb. 10, 2020) (citing U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n. 4 (U.S. Sentencing Comm'n 2018)).

On December 21, 2018, however, Congress passed the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194. Section 603(b) of that Act amended § 3582(c)(1)(A) to allow defendants, in specified circumstances, to file motions for compassionate release directly with the court of conviction. *See* First Step Act, § 603(b). Section 3582(c)(1)(A), as amended by the First Step Act, provides in relevant part:

(c) Modification of an imposed term of imprisonment. — The court may not modify a term of imprisonment once it has been imposed except that —

> (1) in any case.—

>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

>>> (i) extraordinary and compelling reasons warrant such a reduction;

>>> […]

>>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission […].

18 U.S.C. § 3582(c)(1)(A).

As was the case prior to enactment of the First Step Act, § 3582(c)(1)(A) permits compassionate release based on "extraordinary and compelling reasons." *Id*. The Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

## 2. U.S.S.G. § 1B1.13 Policy Statement

Because § 3582(c)(1)(A) permits a sentencing reduction only where "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission," the pertinent policy statement, found at U.S.S.G. § 1B1.13, is binding on the Court. 18 U.S.C. §

3582(c)(1)(A); *see also Dillon*, 560 U.S. at 827 (Because § 3582(c)(2) only permits sentence reductions "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," the applicable policy statement is binding).

The Sentencing Commission Policy Statement implementing 18 U.S.C. § 3582(c)(1)(A) states that the Court may reduce a term of imprisonment if it determines that, in relevant part, the requested reduction of the defendant's sentence meets each of three criteria:

> (1) extraordinary and compelling reasons warrant the reduction;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

"[T]he Sentencing Commission is responsible for defining what should be considered extraordinary and compelling reasons for sentence reduction under § 3582(c)(1)(A)." *United States v. Hiller*, ELH-18-389, 2020 WL 2041673 at *3 (D. Md. April 28, 2020) (citing 28 U.S.C. § 994(t)) (further citation and internal quotation marks omitted).   The Commission's Policy Statement, Application Note 1 of § 1B1.13, defines "extraordinary and compelling reasons" as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2),[3] extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include

---

[3]     As discussed above, subsection (2) of § 1B1.13 requires that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of Defendant.— The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.— As determined by the Bureau of Prisons, there exists in the defendant's case an extraordinary or compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 app. note 1.

Additionally, pursuant to the mandate in § 994(t), Application Note 3 states: "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."  U.S.S.G. § 1B1.13 app. note 3.

### 3.  BOP Program Statement 5050.50

The policy statement in § 1B1.13 is not the only source of criteria the Court may apply in determining whether "extraordinary and compelling reasons" exist to justify a reduction.  As

detailed above, Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 app. note 1(D) (emphasis added). Pursuant to this power, the BOP has issued a policy statement outlining the circumstances that it will permit a compassionate release request. This BOP regulation appears at Bureau of Prisons Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205.[4] Notably, both the Guideline policy statement in § 1B1.13 and BOP Program Statement 5050.50 limit "extraordinary and compelling reasons" for compassionate release to circumstances involving illness, declining health, age, or exceptional family circumstances.

While Program Statement 5050.50 contains standards that are both more extensive than, and slightly different from, those set forth under § 1B1.13(1)(A) of the policy statement, BOP's program statement and determination regarding Petitioner's eligibility for relief is nonetheless entitled to appropriate deference. *See Reno v. Koray*, 515 U.S. 50, 61 (1995) (BOP program statements, which do not require notice and comment, are entitled to "some deference" where they reflect a "permissible construction of the statute") (internal quotation marks omitted). However, to the extent that the program statement and the policy statement conflict, it is the Sentencing Commission's policy statement – the source directly authorized by statute – that is binding.

---

[4] The Program Statement is available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf. This program statement was amended effective January 17, 2019, following passage of the First Step Act. It replaces the previous program statement, 5050.49, CN-1.

Like the policy statement in Application Note 1(B) to § 1B1.13, Program Statement 5050.50 allows a reduction in sentence ("RIS") for elderly inmates with medical conditions where those inmates fit the following criteria:

- Age 65 and older.

- Suffer from chronic or serious medical conditions related to the aging process.

- Experiencing deteriorating mental or physical health that substantially diminishes their ability to function in a correctional facility.

- Conventional treatment promises no substantial improvement to their mental or physical condition.

- Have served at least 50% of their sentence.

Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205 at 6 ("Elderly Medical Category").[5]

Establishing the criteria in Program Statement 5050.50 and Application Note 1 to § 1B1.13 is just the first step of a multi-step inquiry that ultimately results in the court weighing the factors set forth in 18 U.S.C. § 3553(a) to determine if the "rare" and "extraordinary" remedy of compassionate release is appropriate. *See United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019) (holding that "a compassionate release […] is an extraordinary and rare event."); *United States v. Mangarella*,

---

[5]     Program Statement 5050.50 also contains two additional categories which allow for reduction of an inmate's sentence on the basis of age. Those categories, labeled "'New Law' Elderly Inmates" and "Other Elderly Inmates," require a petitioning inmate to have served "30 years or more of their term of imprisonment" or "the *greater of* 10 years or 75% of the term of imprisonment to which the inmate was sentenced," respectively. Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205 at 6 (emphasis added). As explained more fully below, because Petitioner has only served 54%—or approximately 194 months—of her total 360-month sentence, she does not qualify for release under those additional categories. *See* Petitioner's Exhibit One (BOP Public Inmate Information Data for Paulette Martin indicating that, as of May 14, 2020, Petitioner had served 15 years, 11 months and 21 days), at 3.

2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020).  Here, not only does Petitioner not satisfy the above criteria, but she also has not shown that the extraordinary and rare remedy of compassionate release is merited.

### B.  Analysis

The government does not contest that this case is properly before the Court for a determination on the merits.  Because Petitioner presented her request to the Warden more than 30 days before filing the instant motion, she has met the minimum administrative prerequisite under § 3582(c)(1)(A) for filing the motion.  Similarly, because the BOP issued a decision denying Petitioner's request, the government is not asking the Court to stay this matter pending completed BOP review.

On the merits, however, the government respectfully submits that the Court should deny Petitioner's motion due to the lack of "extraordinary and compelling reasons" sufficient to support a reduction of her sentence.  Petitioner bears the burden of establishing that a sentence reduction is warranted.  *United States v. Mattingley*, 2020 WL 974874, at *3 (W.D. Va. Feb. 28, 2020) ("the party trying to change the status quo" has the "burden to prove that he is entitled to a reduction of sentence under § 3582(c)(1)"); *United States v. Edwards*, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020) ("A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted").  For the reasons that follow, Petitioner's request for compassionate release should be denied.

> **1.  Petitioner's request for a reduction in sentence should be denied, because she has not established extraordinary and compelling reasons for immediate release.**

Petitioner relies upon § 1B1.13(1)(A) to argue that extraordinary and compelling reasons warrant a sentence reduction to time-served.  Specifically, Petitioner argues that she meets the

criteria for compassionate release identified in U.S.S.G. § 1B1.13 Application Note 1(B) because she is "73 years old, medically vulnerable, and has served roughly 63%[6] of her 30-year sentence (counting good-time credit)."   ECF No. 2001 at 11.   Petitioner identifies a variety of medical conditions including: hypertension, hyperlipidemia, rheumatoid arthritis, a heart murmur, prediabetes, cataracts and hearing loss.   *Id.* at 5.

The obvious flaw in Petitioner's argument is that she is no longer confined in a correctional facility.   Thus, Petitioner cannot meet the requirements of the "Elderly Medical" category in Program Statement 5050.50.   Specifically, Petitioner is not "experiencing deteriorating mental or physical health **that substantially diminishes [her] ability to function in a correctional facility**" as required under Program Statement 5050.50.

Likewise, Petitioner does not meet the eligibility requirements of § 1B1.13, which requires a showing that the inmate suffers from: (1) a serious physical or medical condition; (2) a serious functional or cognitive impairment; or (3) a deterioration of physical or mental health because of the aging process— "that substantially diminishes the ability of the defendant to provide self-care **within the environment of a correctional facility** and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(A)(ii) (emphasis added).

Nor does Petitioner qualify under the "Other Elderly Inmates" category in Program Statement 5050.50 because that category requires a petitioning inmate to have served "the greater of 10 years or 75% of the term of imprisonment to which the inmate was sentenced."   Petitioner has not served 75% of the term of imprisonment imposed.   Indeed, as noted previously, Petitioner

---

[6]     Petitioner's calculation differs from the government's (that she has served 54%, or approximately 194 months, of her 360-month sentence), in that it includes a 'back-of-the-napkin' subtraction of good time credit.  While the differing numbers do not change the analysis here, it is worth noting that the BOP does not make this adjustment when evaluating whether an inmate has satisfied the Program Statement 5050.50 reduction in sentence criteria.

has only served 54% of her 360-month sentence.[7]  *See* Petitioner's Exhibit A (BOP Public Inmate Information Data for Paulette Martin indicating that, as of May 14, 2020, Petitioner had served 15 years, 11 months and 21 days).

Furthermore, under both the policy statement in § 1B1.13 and Program Statement 5050.50, a petitioner moving for compassionate release based on age and medical condition must show, at a minimum, that she is "experiencing a serious deterioration in physical or mental health because of the aging process."  Whether an inmate is "experiencing a serious deterioration in physical or mental health because of the aging process […] is a fact-intensive analysis."  *United States v. Ebbers*, 432 F. Supp. 3d 421, 428 (S.D.N.Y. 2020).

Although an inmate need not have lost all ability to provide self-care or be suffering from a terminal illness to qualify for relief based on age-related physical or mental deterioration as would otherwise be required under Section 1B1.13 Application Note 1(A), it is nonetheless required under 1(B) that the age-related deterioration be "serious."  *Id*.  An inmate's ability to provide self-care in prison is, thus, one factor courts may consider in determining the seriousness of an inmate's deterioration in physical or mental health.  *See, e.g., United States v. Bellamy*, 2019 WL 3340699, at *5 (D. Minn. July 25, 2019) (finding that inmate's "health is seriously deteriorating because of the aging process and that his ability to function in a prison facility is substantially diminished as a result"); *United States v. Johns*, 2019 WL 2646663, at *3 (D. Ariz. June 27, 2019) (holding that inmate "is on the cusp of or is suffering from a serious physical or medical condition and is experiencing deteriorating physical or mental health because of the aging process that substantially diminishes his ability to provide self-care within the BOP and from which he is not expected to recover").

---

[7]     Even by Petitioner's calculation, subtracting a period of good time credit, she has only served 63% of her sentence.

Here, although Petitioner is 73 years old, she has failed to demonstrate that she is experiencing any "serious" age-related physical or mental deterioration.  First, while portions of Petitioner's medical documentation support the notion that she has suffered from various past and present medical conditions, the records also repeatedly indicate, as recently as January 22, 2020, that her health conditions remain stable and were well-controlled with appropriate medication and treatment.  *See* Government's Exhibit A (Bureau of Prisons Medical Records for Paulette Martin) at 2 and *generally*.  There is simply no evidence, in the medical documentation or elsewhere, that Petitioner's conditions, either individually or collectively, have contributed to "a serious deterioration in [her] physical or mental health because of the aging process," as is required under both the Policy Statement in § 1B1.13 and Program Statement 5050.50.  Indeed, the BOP denied Petitioner's administrative request for compassionate release – while she was still incarcerated – finding:

> Inmate Martin meets the age and time served criteria as she is 73 years old and has served 52.2% of her sentence. However, inmate Martin does not appear to meet medical criteria for a RIS at this time. Inmate Martin is a Medical Care 2 inmate and consultation with medical staff indicate that she is currently stable. She suffers from Right Bundle Branch Block (Cardiac), Cardiac Murmur, Hypertension, and Knee and Ankle Pain. These conditions are currently managed via treatment protocols and are not impacting inmate Martin's ability to function in a correctional environment.  Therefore, it is recommended that her request be denied.

Exhibit B (RIS Coordinator's Memorandum, dated January 31, 2020).  *See also* Government's Exhibit C (RIS – Warden Response to Inmate) ("A review of your case reveals that you are over age 65 and you have served over 50% of your sentence.  However, a review of you[r] medical file and consultation with your medical provider reveals that [you] do not suffer from a chronic or serious medical condition that substantially diminishes your ability to function in a correctional facility.  Therefore, your request is denied.").

Petitioner's medical conditions, even when viewed in the light most favorable to her, simply do not amount to a "serious deterioration of physical or mental health." *Cf. Bellamy*, 2019 WL 3340699, at *4 (finding a serious deterioration where "Bellamy's medical records show that he needs assistance using the toilet, getting dressed, bathing, transferring to his wheelchair from his bed, using the computer, obtaining meals, doing laundry, and obtaining his medication, among other activities."); *Ebbers*, 432 F. Supp. 3d at 431 (granting relief where Ebbers required "assistance with daily living," suffered from severe dementia, anemia, and liver disease, and had experienced significant and sudden weight loss—58 pounds over the course of a year and a half).

In any event, Petitioner cannot demonstrate that "[her] ability to function in a correctional facility" is substantially diminished given that she is no longer in a correctional facility. Consequently, Petitioner fails to meet the criteria for compassionate release under U.S.S.G. § 1B1.13 commentary note 1(B), which she relies on.

> **2. Petitioner's transfer to home confinement resolves the issues raised in her compassionate release motion.**

As discussed above, on June 2, 2020, the Bureau of Prisons transferred Petitioner to home confinement pursuant to the CARES Act, and the parties jointly recommended to the Court that Petitioner's motion be stayed. Petitioner subsequently filed an amended motion that nevertheless renewed her request for compassionate release – a remedy created specifically for those who are seriously ill and incarcerated in the Bureau of Prisons. *See Ebbers*, 432 F. Supp. 3d at 430 ("The compassionate release provisions were first included in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, ch. II, 98 Stat. 1987. Section 3582(c)(1)(A)(i), in particular, was intended to be a 'safety valve' to reduce a sentence in the 'unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner.' S. Rep. 98-225, at 121 (1983).").

15

While the government does not now argue that Petitioner's transfer to her home renders her motion for compassionate release moot, it is unclear exactly what impact this additional relief would have on her health or the quality of her medical care. There is no longer any concern that she will be unable to provide self-care or receive proper medical care while in the confines of prison. Nor is there any possibility that Petitioner will be exposed to COVID-19 as a result of being confined to a BOP facility.

Moreover, Petitioner has not cited a single case in which a defendant was granted compassionate release despite a transfer to home confinement to serve the remainder of their federal sentence in their chosen home setting. Nor has undersigned counsel found such a case. Courts have found such circumstances justify denying compassionate release, however. For example, the U.S. District Court for the Southern District of New York denied a compassionate release motion for the sole reason that the defendant had already been transferred to home confinement, despite his serious medical conditions. *See United States v. Tagliaferri*, 2019 WL 6307494 (S.D.N.Y. Nov. 25, 2019). The court wrote:

> If Tagliaferri were still incarcerated or in some other form of BOP physical custody, his serious health issues may well have constituted "extraordinary and compelling reasons" for granting him compassionate release. But the purposes of 18 U.S.C. § 3582(c)(1)(A) will not be served by granting Tagliaferri's motion now. Thus, although the Court recognizes—as it did at sentencing—that Tagliaferri suffers from a variety of serious medical conditions, it nonetheless concludes that, in light of his release from custody, compassionate release is not warranted here. Tagliaferri's motion for a sentence reduction is therefore denied.

*Tagliaferri*, 2019 WL 6307494, at *4. *See also*, *e.g.*, *United States v. Rogers*, 2020 WL 3423423, at *3 (S.D. Miss. June 22, 2020) ("Defendant has already been transferred to home confinement with around 39 months of her sentence remaining. Under these conditions, and without any other 'extraordinary or compelling reason' to justify a sentence reduction, the Court cannot disturb Defendant's sentence."); *United States v. Mogavero*, 2020 WL 1853754, at *2 (D. Nev. Apr. 13,

2020) (noting that "it appears that Mogavero may be imminently transferred to home confinement under 18 U.S.C. § 3624(c)"); *United States v. Park*, 2020 WL 1970603, at *1 (S.D.N.Y. Apr. 24, 2020) (reluctantly granting compassionate release only after BOP repeatedly delayed defendant's transfer to home confinement).

Petitioner's request for compassionate release is not only legally insupportable, it is plainly not merited. Granting this relief would not place her in a better position with respect to her aging process or medical conditions. It would simply relieve her of the federal sentence she wishes to shed. There is simply no justification for compassionate release in these circumstances.[8]

## II. Petitioner's Request for a Sentence Reduction Pursuant to Section 404 of the First Step Act Should be Denied.

### A. Legal Framework

Section 404 of The First Step Act of 2018, Public Law No. 115-015, permits this Court, upon motion of the defendant or the government, or upon its own motion, to impose a reduced sentence on certain offenses in accordance with the Fair Sentencing Act of 2010, if no such reduction was previously granted. First Step Act of 2018, Pub. L. No. 115-015, § 404, 132 Stat 015, 015 (2018). The section also expressly provides that any relief is discretionary. *Id.* ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."). Section 404 reads:

### SEC. 404. Application of Fair Sentencing Act.

(a) Definition of covered offense.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory

---

[8]     The Court should also decline Petitioner's alternative request (ECF No. 2001 at 13) to rely on the district court decision in *United States v. Decator*, CCB-95-0202, 2020 WL 1676219, at *2 (D. Md. Apr. 6, 2020) (finding that stacked § 924(c) convictions constituted an extraordinary and compelling reason for compassionate release), which the Government has appealed, and in which oral argument may be scheduled in September. *See United States v. Decator, et al.*, Case Nos. 20-6821, 20-6869, 20-6875 and 20-6877. In any event, there are still no extraordinary and compelling reasons for release here even under the rationale adopted in *Decator*.

penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) Defendants previously sentenced.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) Limitations.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act of 2018, Pub. L. No. 115-015, § 404, 132 Stat 015, 015 (2018).

Substantively, § 404(b) of the First Step Act provides that a court "may" in its discretion "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 […] were in effect at the time the covered offense was committed."  The Fair Sentencing Act of 2010, which took effect on August 3, 2010, reduced the disparity in the treatment of cocaine base and powder cocaine offenses from 100-to-1 to 18-to-1.  *See Dorsey v. United States*, 567 U.S. 260, 264 (2012); Pub. L. No. 111-220, 124 Stat. 2372.  Section 2 of the Fair Sentencing Act reduced the penalties for offenses involving cocaine base by increasing the threshold drug quantities required to trigger mandatory minimum sentences under 21 U.S.C. § 841(b)(1)(A) and (B).[9]  Pub. L. No. 111-220, § 2, 124 Stat 2372.  Specifically, the quantity of cocaine base necessary to trigger the 5-year mandatory minimum under § 841(b)(1)(B) was increased from 5 grams of cocaine base to 28

---

[9]     Section 3 of the Fair Sentencing Act, which is not at issue here, eliminated the mandatory minimum sentence for simple possession.  *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 3, 124 Stat 2372, 2372 (2010).

grams, and the quantity necessary for the 10-year minimum under § 841(b)(1)(A) was increased from 50 grams to 280 grams.  *Dorsey*, 567 U.S. at 269; Section 2(a), 124 Stat. 2372.   Thus, a "covered offense," which is defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 […], committed before August 3, 2010," is an offense where the statutory penalty range has changed because it was based on a certain quantity of crack cocaine.

Procedurally, the proper mechanism for reduction motions invoking Section 404 is found in 18 U.S.C. § 3582(c)(1)(B).  Section 3582(c)(1)(B) provides that a "court may not modify a term of imprisonment once it has been imposed except that – (1) in any case – […] (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute[…]."  And indeed, Section 404 of the First Step Act expressly authorizes by statute changes to the penalty range for certain long-final sentences.  As discussed above, relief is entirely discretionary.  First Step Act, § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").

### B.   Analysis

Petitioner claims that she is eligible for relief under Section 404.  It is the government's position that Petitioner is ineligible for relief, and the government alternatively requests that the relief be denied as a matter of discretion.

### 1.   Petitioner is not entitled to relief because her offenses involved more than 1.5 kilograms of cocaine base.

Petitioner argues that Counts One, Eight, Forty, and Fifty-Six are all Section 404 "covered offenses."  ECF No. 2001 at 13.  It is the government's position that Petitioner was not convicted of covered offenses as required by the Fair Sentencing Act, because evidence presented at trial established that her drug trafficking offenses involved more than 1.5 kilograms of cocaine base.

19

PSR at ¶ 61.  Because the Fair Sentencing Act increased the quantity necessary for the 10-year minimum under § 841(b)(1)(A)(iii) from 50 grams to *280 grams*, this quantity would have resulted in the same statutory penalty both before and after the Act.

The government recognizes, however, that the Fourth Circuit's recent decision in *United States v. Wirsing*, 943 F.3d 175 (4th Cir. Nov. 20, 2019), as amended (Nov. 21, 2019) is now circuit precedent.[10]  The government acknowledges that *Wirsing* is controlling for this Court on this issue, but we do not concede that the case was decided correctly, and we thus note our objection and preserve our argument for purposes of any subsequent appeal in this case or others. Specifically, the government's position is that actual quantities should matter in eligibility determinations, as the sole change effected by the Fair Sentencing Act that the First Step Act made retroactive was an adjustment of quantity thresholds.  The portion of the Fair Sentencing Act at issue, which focused entirely on drug quantities, simply stated:

SEC. 2. COCAINE SENTENCING DISPARITY REDUCTION.

(a)     CSA.—Section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) is amended—

(1) in subparagraph (A)(iii), by striking "50 grams" and inserting "280 grams;" and

(2) in subparagraph (B)(iii), by striking "5 grams" and inserting "28 grams."

Section 2(a), 124 Stat. 2372.  The result was a simple modification of the statute's quantity requirements.  Drug quantities obviously differ from case to case.  By only amending the quantity thresholds, Congress was requiring courts to focus on the relevant quantities in each case.

---

[10]     The Fourth Circuit held in *Wirsing* that "[a]ll defendants who are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii), and who are not excluded pursuant to the expressed limitations in Section 404(c) of the First Step Act, are eligible to move for relief under that Act."  *Wirsing*, 943 F.3d at 186.

The First Step Act's plain text shows that Congress, in enacting § 404, was concerned about a particular class of cocaine base defendants – those whose statutory penalties would have been lower but for the fact that they were sentenced before August 3, 2010, and, therefore, could not take advantage of the Fair Sentencing Act. *See Dorsey v. United States*, 567 U.S. 260, 264 (2012) (concluding that the Fair Sentencing Act's more lenient penalty provisions apply to defendants sentenced after August 3, 2010, whether or not their crimes were committed before that date). Every defendant charged and sentenced today for the exact crime Petitioner committed would face the same statutory penalty range she faced.

Here, because Petitioner's drug trafficking convictions involved more than 1.5 kilograms of cocaine base, far more than the amount contemplated by the current 280-gram threshold in § 841(b)(1)(A)(iii), there was no cocaine base-related disparity with respect to her statutory penalty range. While this Court may be constrained by the *Wirsing* decision from finding Petitioner ineligible, the Court can deny relief as a matter of discretion.

### 2.   Petitioner is not entitled to relief because her offenses also involved 150 kilograms of powder cocaine and 20 kilograms of heroin.

Additionally, Petitioner's statutory penalty range for her drug trafficking convictions for distribution of cocaine and cocaine base was not modified by the First Step Act because, both before and after the effective date of the Fair Sentencing Act, the statutory range for her offense involving 150 kilograms of powder cocaine and 20 kilograms of heroin was twenty years to life imprisonment, under 21 U.S.C. §§ 841(b)(1)(A)(i), (ii) and 851, and remains so today. Therefore, it is the government's position that Petitioner's convictions are not "covered offenses."

The government recognizes, however, that the Fourth Circuit's recent decision in *United States v. Gravatt*, 953 F.3d 258 (4th Cir. 2020), is also now circuit precedent. The Fourth Circuit held in *Gravatt* that a defendant convicted of drug trafficking conspiracy involving both cocaine

21

base and powder cocaine was eligible for relief under the First Step Act. *Gravatt*, 953 F.3d at 264. The government acknowledges that *Gravatt* is controlling for this Court on this issue, but we do not concede that the case was decided correctly, and we thus note our objection and preserve our argument for purposes of any subsequent appeal in this case or others. Despite *Gravatt*, moreover, the Court can deny relief as a matter of discretion. *See id.* ("[O]ur decision today only requires that Gravatt's sentence receive a substantive review. It should not be construed as expressing any view on how the district court should rule. Nor do we suggest the factors considered by the district court in its eligibility analysis may not be considered in evaluating Gravatt's motion on the merits. It is for the district court, in its discretion, to consider whether Gravatt is entitled to relief.").[11]

### 3. This Court should consider the factors set forth in 18 U.S.C. § 3553(a) and deny the requested reduction.

The factors set forth in 18 U.S.C. § 3553(a) support a discretionary denial of a sentence reduction in this case. "Nothing in [Section 404] shall be construed to require a court to reduce

---

[11]     Should this Court grant a sentence reduction, it should decline to find that the sentencing package doctrine applies in this context, as Petitioner urges the Court to do. ECF No. 2001 at 16-20. The only binding precedent cited by Petitioner in support of this theory involves the vacatur of convictions – a vastly different context than the limited sentence reduction authorized by the First Step Act. *See, e.g.*, *United States v. Smith*, 115 F.3d 241 (4th Cir. 1997) (vacating § 924(c) conviction after the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995) (requiring substantial evidentiary showing that firearm was actually used)); *United States v. Hillary*, 106 F.3d 1170, 1171 (4th Cir. 1997) (same); *United States v. Pratt*, 915 F.3d 266, 275 (4th Cir. 2019) ("a full resentencing is typically appropriate when we vacate one or more convictions.") (citing *United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017)).

However, the Fourth Circuit has determined that the sentencing package doctrine need not apply where a district court can simply exercise its discretion to modify a sentence. *See United States v. Hadden*, 475 F.3d 652, 669 (4th Cir. 2007) ("The district court has "broad and flexible power" […] to determine the nature and scope of the remedial proceedings"). Moreover, the Court has discretion to leave the concurrent sentences on Counts 4, 10, 16, 55, 62, 14, 25, 29, 31, 33, 36, 38, 43 and 45 intact. *See United States v. Charles*, 932 F.3d 153 (4th Cir. 2019) (affirming district court's decision not to review a valid drug trafficking offense pursuant to the concurrent sentence doctrine).

any sentence pursuant to this section.").  First Step Act, § 404(c).  Thus, § 3553(a) factors are highly relevant in determining whether a defendant should receive a discretionary reduction of sentence.

Section 3553(a) provides that "[t]he court shall impose a sentence sufficient, but not greater than necessary," to comply with the purposes described in § 3553(a)(2):

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D).  In imposing the sentence, the court shall consider *inter alia* "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).[12]

Here, the nature and circumstances of the offense are an important consideration.  18 U.S.C. § 3553(a)(1).  Petitioner's fifty-six federal criminal convictions involved a massive conspiracy to distribute many kilograms of cocaine, cocaine base and heroin – street narcotics that pose a great potential for harm to the community.  Petitioner was not a low-level participant, but the leader of the conspiracy.  Rather, evidence at trial, derived from Title III interception of

---

[12]     Additionally, the Court may consider an eligible defendant's post-sentencing conduct in determining whether relief is appropriate.  *See Pepper v. United States*, 562 U.S. 476 (2011).  The government acknowledges that Petitioner's conduct in the Bureau of Prisons has been good, as required.  *See* Petitioner's Exhibit C.  However, as Judge Bredar recently observed – good conduct in prison should not be considered extraordinary.  ECF No. 193 at 2, in *United States v. Blackwell*, case no. JKB-10-cr-00493 ("Although **all inmates are expected to behave while they are incarcerated**, and to progress through the security rating process, not all do.  **All inmates are expected to adhere to their programmatic regimens**, including, when appropriate, obtaining a GED, but, again, not all do.") (emphasis added).

telephone conversations, surveillances, cooperating witnesses, items recovered during the execution of search warrants, telephone records, and other documents, established that Petitioner, along with a co-defendant, ran a massive narcotics operation throughout Maryland.  PSR at ¶¶ 40-55.  The conspiracy, which operated over many years, was a multimillion dollar business.  *See* Sentencing Transcript at 38 (Judge Titus noting that "conservatively," the estimate of Petitioner's drug proceeds was "from cocaine is $4,510,000 [and] from heroin $3,600,000," resulting in a total figure of $8 million.).[13]

At sentencing, Judge Titus found that Petitioner was "richly deserving of significant and serious punishment," because she was a "long-term drug dealer […] not somebody new to this occupation."  Sentencing Transcript at 103-104.  The Court further remarked: "you would think that by the time you arrived at age 60 you would learn not to do these things.  If there's any case that proves that that's not correct, it's this case[…].  I consider that any sentence that does not keep Ms. Martin away from the public would be a violation of my oath as a judge."  Sentencing Transcript at 104-105.

Chief Judge Bredar recently emphasized "the correlation between illegal drug trafficking and violent crime."  ECF No. 193 at 3-4, in *United States v. Blackwell*, case no. JKB-10-cr-00493.  He wrote:

> There is no serious dispute that the illegal drug business brings with it violence, often lethal and on a large scale. The Court finds and concludes that those who participate in and profit from large scale, illegal drug trafficking activities are engaging in conduct that at least indirectly leads to widespread violence.

*Id*.  The fact that violence is inherent in large scale drug-trafficking is uncontroversial. Here, however, violence was a clear risk, as shown not only by the vast quantities of narcotics, but also

---

[13]     It should be noted that Petitioner failed to pay $5,000 of her $5,500 of special assessments, and the remainder has evidently expired.  *See* Petitioner's Exhibit B (Summary Reentry Plan - Progress Report), at 3

by Petitioner's firearm enhancement under U.S.S.G. § 2D1.1(b)(1) and U.S.S.G. § 1B1.3(a) due to her co-defendants possessing firearms in furtherance of the drug conspiracy.  PSR at ¶ 63. Additionally, the large quantities of cocaine (150 kilograms), cocaine base (1.5 kilograms) and heroin (20 kilograms) indicate that no disparity demands correction.  Petitioner's crimes simply cannot be dismissed as mere "non-violent" drug offenses.

The need to afford adequate deterrence to criminal conduct crime and promote respect for law is also important here.  18 U.S.C. § 3553(a)(2)(A) & (B).  As discussed above, the sentencing Court found the original life sentence to be not just reasonable, but required.  *See* Sentencing Transcript at 105 ("I consider that any sentence that does not keep Ms. Martin away from the public would be a violation of my oath as a judge.").  Yet, Petitioner's life sentence has since been reduced to 360 months, with the government's acquiescence.  And, particularly considering the remainder of that sentence will be served on home confinement, it should not be reduced any further.

Additionally, the First Step Act has not changed Petitioner's guidelines sentencing range. The range remains 360 months to life, despite her claim to the contrary.  *See* ECF No. 2001 at 24 n. 9 ("Today, the Court would assign Ms. Martin a base offense level 34, *see* U.S.S.G. §2D1.1(c)(3); with a 4-level role enhancement and 2-level gun enhancement, her final offense level would be 40. With an offense level 40 and criminal history category I, Ms. Martin's guideline range would be 292-365 months.").  Petitioner does not explain her calculation, but it appears that she relies on the PSR's original equivalency calculation of "30,000 kilograms or more of marijuana."  *See* PSR at ¶ 61.  The drug conversion procedures have been updated since the PSR was drafted in 2006, however, and Petitioner's offenses result in the same guidelines range under the drug conversion table at U.S.S.G. § 2D1.1, Application Note 8(D).  Specifically, the converted

drug weight for 150 kilograms of cocaine is 30,000 kilograms; for 1.5 kilograms of cocaine base it is 5,356.5 kilograms; and for 20 kilograms of heroin it is 20,000 kilograms – for a total of 55,356.5 kilograms of converted drug weight. *Id*. This quantity results in a base offense level of 36. With a final offense level of 42, after 6 levels of adjustments, and criminal history category I, Petitioner's guidelines range would still be 360 months to life.

The history and characteristics of the Petitioner are also an important consideration, and her criminal history should also be considered. 18 U.S.C. § 3553(a)(1). As Judge Titus noted at sentencing, Petitioner was a "long-term drug dealer […] not somebody new to this occupation." Sentencing Transcript at 103. Indeed, Petitioner was previously convicted of a similar drug trafficking offense in the U.S. District Court for the District of Columbia (case no. 86-CR-0235). PSR at ¶ 73. As the result of search warrants executed at Petitioner's Washington, D.C., residence in that case, law enforcement recovered substantial evidence of a large-scale drug-trafficking operation. Specifically, during the first search:

> From the downstairs of the house, the police recovered two plastic bags of cocaine from underneath a sofa and behind a chair. Another two bags were located underneath a table. A suitcase from a closet contained $7,378.00 in U.S. currency. In the upstairs closet a .32 caliber pistol was found inside a boot. Four live rounds of .32 caliber ammunition were located in a change purse. Numerous objects constituting drug paraphernalia included 8 bottles of Inositol, 1 bottle of lactose, small funnel, 2 scales, one cocaine preparation kit, smoking pipe and numerous glassine bags.

PSR at ¶ 75. During the second search:

> Thirty nine bags of cocaine were discovered behind a mirror in the dining room and $4,344.00 in U.S. currency found in a box underneath the living room sofa. The defendant was searched and three bags of cocaine were recovered from inside her blouse and $97.00 in U.S. currency from her purse. The total net weight of the cocaine from both searches was 131,248.6 mg. And the total amount of U.S. currency recovered was $11,722.00.

PSR at ¶ 76.

Moreover, it is inappropriate for Petitioner to argue for the sentence she imagines she would receive if prosecuted today, under the premise that she would not now be subject to an § 851 enhancement. *See* ECF No. 2001 at 23 ("the state conviction identified in the § 851 notice (which doubled the mandatory minimum term) no longer qualifies as a 'felony drug offense' under 21 U.S.C. § 851, as amended")).  In proposing a sentence without the § 851 enhancement, Petitioner is inappropriately asking this Court to apply a different provision of the First Step Act – Section 401– retroactively despite the Act's express provision not to do so. *See* First Step Act, § 401(c).  Section 401 lowered the statutory-minimum sentences under Section 841(b)(1)(A) for recidivists and also changed the definition of qualifying predicate offenses. *Id.*  Petitioner essentially seeks to benefit from this revision.  However, Section 401(c) provides: "[t]his section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed as of the date of such enactment*."  First Step Act, § 401(c) (emphasis added).  Petitioner was sentenced in December 2006, many years prior to the First Step Act.  Therefore, it is improper for Petitioner to seek this relief.

A sentence once imposed is final, subject to such exceptions as Congress has allowed. *United States v. Addonizio*, 442 U.S. 178, 189 (1979).  Though "[a] district court does not have inherent authority to modify a previously imposed sentence; it may do so […] pursuant to statutory authorization." *United States v. Smartt*, 129 F.3d 539, 540 (10th Cir. 1997) (quotations omitted). A reduction under § 3582(c)(1)(B) – where granted – does not affect the finality of the original sentence and judgment. *United States v. Sanders*, 247 F.3d 139, 142-43 (4th Cir. 2001).  That Section, instead, provides authorization for courts to modify previously imposed sentences "to the extent […] expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); *see also Wirsing*, 943 F.3d

at 185 ("[I]n determining eligibility under § 3582(c)(1)(B), courts must look to the applicable statute to determine 'the extent' to which modification is 'expressly permitted by [that] statute.').

Section 404 of the First Step Act – the statute at issue here – merely provides that courts "may […] impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act, § 404(b). Accordingly, the Act grants courts the discretion to reduce the sentence of eligible persons only to the extent that their sentences would have been different if Sections 2 or 3 of the Fair Sentencing Act of 2010 had applied at the initial sentencing. *Id.* Indeed, the Fourth Circuit has stated that "[A] district court should 'plac[e] itself in the time frame of the original sentencing, altering the relevant legal landscape only by the changes mandated by the 2010 Fair Sentencing Act.'" *United States v. Venable*, 943 F.3d 187, 187 (4th Cir. 2019) (quoting *United States v. Hegwood*, 934 F.3d 414, 418 (5th Cir. 2019)); *United States v. Brooks*, 788 F. App'x 213, 214 (4th Cir. 2019) (same); *United States v. Curry*, 792 F. App'x 267, 268 (4th Cir. 2020) (same); *but see United States v. Chambers*, 956 F.3d 667 (4th Cir. 2020) (permitting courts reducing sentences under the First Step Act to correct <u>retroactive</u> Guidelines errors that are based on intervening case law).

Therefore, a sentence modification under the First Step Act is not a plenary proceeding that allows vacatur of aspects of sentencing like Section 851 enhancements. It is a limited adjustment to an otherwise final sentence. *See*, *e.g.*, *Brooks*, 788 F. App'x at 214; *Curry*, 792 F. App'x at 268; *Hegwood*, 934 F.3d at 417-19; *Brown v. United States*, No. CR ELH-00-0100, 2020 WL 1248950, at *6 (D. Md. Mar. 16, 2020) (finding "the majority of courts have declined to conduct plenary resentencing proceedings" and collecting cases); *United States v. Robinson*, 2019 WL 5967967, at *6 (W.D. Va. Nov. 13, 2019) ("the First Step Act does not expressly permit plenary resentencing" and therefore the defendant was "not entitled to modification of his status as a career offender").

*See also Wirsing*, 943 F.3d at 182 n. 1 ("Defendant does not contest that his relief, if any, will be in the form of a limited sentence modification rather than a plenary resentencing").

These facts support the government's position that Petitioner's current 360-month sentence is the correct sentence pursuant to the factors set forth in 18 U.S.C. § 3553(a), and should remain undisturbed. There is no constitutional right to a sentencing reduction. *Dillon,* 560 U.S. 817. It is within the Court's discretion to reduce a sentence, or not, even where eligibility exists. *Id.* at 827. The sentence reflects the seriousness of Petitioner's offenses, promotes respect for the law, and provides just punishment for those offenses. Petitioner's sentence also affords specific and general deterrence to future criminal conduct. The government respectfully requests this Court deny the Petitioner's motion.

## <u>CONCLUSION</u>

Based upon the foregoing, Petitioner's request should be denied because she has not shown an "extraordinary and compelling reason" for compassionate release, as defined by U.S.S.G. § 1B1.13, nor is release merited under Section 404 of the First Step Act and the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

Robert K. Hur
United States Attorney

By:     _____/s/_____
Ellen E. Nazmy
Special Assistant United States Attorney

_____/s/_____
David I. Salem
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 8, 2020, a copy of the foregoing Response was delivered via ECF to Sapna Mirchandani, Esquire, counsel for the Petitioner.

By:   _____/s/_____
Ellen E. Nazmy
Special Assistant United States Attorney