IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA   :

   :

v.   : Criminal Case No. DKC 04-0235-1

   :

PAULETTE MARTIN

   :

**MEMORANDUM OPINION**

After a 42-day trial, Paulette Martin was found guilty of conspiracy to distribute and possess with intent to distribute more than one kilogram of heroin, 5 kilograms or more of cocaine, and 50 grams or more of cocaine base.  She was also found guilty of many counts of using a communications device to facilitate narcotics trafficking and substantive possession with intent to distribute controlled substances.  She was sentenced on December 19, 2006, to life imprisonment as to some counts, with lesser concurrent sentences on others. (ECF No. 1059).  The judgment was amended for clerical mistake on November 19, 2010.  (ECF No. 1426).

After the case was transferred to the undersigned, her sentence was amended a second time on December 5, 2019, at the joint request of the defendant and the government.  The life sentences were reduced to three hundred and sixty (360) months imprisonment as a result of the application of Amendment 782 to the sentencing guidelines.  (ECF No. 1963).  She now seeks further reduction to time served, pursuant to 18 U.S.C. 3582 (c)(1)(A)(i)

or, in the alternative, for pursuant to Section 404 of the First Step Act (ECF No. 1985).  She asks the court to grant her motion for compassionate release by reducing her sentence to time-served or, alternatively, to reduce her sentence to 240 months' incarceration under Section 404 of the First Step Act.  She filed an amended motion on June 5, 2020, seeking the same relief, but reporting that she had been transferred by the Bureau of Prisons to home confinement on June 2, 2020.  (ECF No. 2001).  The amended motion omits her request that the pandemic be considered an "additional" reason for relief and that the motion be considered on an expedited basis.

The Government opposes her motion arguing that Ms. Martin has not established extraordinary or compelling reasons for compassionate release and that no sentencing disparity needs correction.  (ECF No. 2019).  Ms. Martin filed a reply (ECF No. 2021).  The government filed a motion for leave to file a surreply (ECF No. 2027), which Ms. Martin opposes (ECF No. 2028). Additionally, Ms. Martin filed supplements (ECF Nos. 2063 and 2077).  The government opposed the first supplement (ECF No. 2071) and she replied. (ECF No. 2072).  For the following reasons, the motion will be granted in part and denied in part.

In its opinion affirming her convictions, the Fourth Circuit stated that "[t]his case involves a large drug trafficking organization that supplied drugs throughout the District of

2

Columbia, Maryland, and Virginia. Paulette Martin was the key player in this organization. Martin acted as a major drug supply intermediary, connecting wholesale drug suppliers to street-level retail dealers." Judge Titus, at her sentencing, said that "[t]his is a person who stands convicted of being at the center of a significant drug operation involving very large quantities of a multitude of drugs." He concluded that the drug activity was long standing—she had no other occupation. Despite her personal history, medical conditions, and age (60 years old at the time), he concluded that any sentence that did not keep her away from the public would not be sufficient.

Ms. Martin has been in custody since her arrest on May 25, 2004, and on home confinement since June 2, 2020. Her release date currently is December 16, 2029. While in the BOP, Ms. Martin obtained her GED, and took courses in a variety of areas and completed drug education. She has no disciplinary history. She has worked in the education department. Now in her mid-70's, she says her health has deteriorated.

Based on its review of the medical records, the Government questions whether she has suffered a "serious deterioration of physical or mental health" and argues that her transfer to home confinement essentially moots any concern for her ability to manage in the BOP. The Government emphasizes the scope and scale of the drug conspiracy, running for several years to the tune of

$8,000,000 in proceeds, and the possession of firearms by co-defendants. It argues that the now reduced 360-month sentence should not be reduced further.

Ms. Martin expresses fear of being returned to BOP custody, if found to be in violation of some condition of release, and argues that she will have to return to custody once the COVID emergency is over. For the present, the contingency of home confinement under the BOP program is not far different from being on supervised release. A new period of imprisonment is available as a sanction for violation. Obviously, the length and nature of the applicable conditions differ as does the procedure for determining a violation, but the fact remains that supervised release is part of the sentence and a person always faces possible reincarceration if the person fails to abide by all conditions imposed. The court understands that return to a BOP facility once the public health emergency is over is likely for someone like Ms. Martin who currently has several years more in her sentence.

Compassionate Release

Ms. Martin's initial "emergency" motion was based in part on the coronavirus public health emergency and in part on her age, medical condition, and time already served. Once she was on home confinement, she deleted the "emergency" nature of her motion but continues to press the other aspects of her compassionate release motion.

4

The background and procedural requirements for consideration of compassionate release motions was recently reviewed in *United States v. High*, 997 F.3d 181, 185-86 (4th Cir. 2021):

> For many years, district courts could reduce a term of imprisonment on that ground only "upon motion of the Director of the Bureau of Prisons." 18 U.S.C. § 3582(c)(1)(A) (2002). But, as part of the First Step Act of 2018, Congress amended the provision to allow federal inmates to file motions for compassionate release directly with a district court once they have exhausted their administrative remedies. *See* Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).
>
> The substantive portions of the statute, as applicable here, provide that, upon receiving such a motion for compassionate release, the court "*may* reduce the term of imprisonment ... *after considering* the factors set forth in section 3553(a) to the extent that they are applicable, *if it finds* that ... extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added). Thus, under the statute, a defendant becomes *eligible* for relief only if the court finds that a reduction is both (1) warranted by "extraordinary and compelling reasons" and (2) "consistent with applicable policy statements issued by the Sentencing Commission." *Id.; see also United States v. McCoy*, 981 F.3d 271, 280 (4th Cir. 2020).
>
> As to the second requirement, however, we recently recognized that "there currently exists no 'applicable policy statement[ ]' " that governs a *defendant's* motion for compassionate release. *McCoy*, 981 F.3d at 281. We explained that "[t]he only policy statement that possibly could be 'applicable' " was U.S.S.G. § 1B1.13, but that that provision, "[b]y its plain terms, ... does not apply to *defendant-filed* motions under § 3582(c)(1)(A)." *Id.* at 282 (emphasis added). It addresses only BOP-filed motions. Thus, as it currently stands, a court may find a defendant who filed a motion eligible for a sentence reduction after finding only that such a reduction is warranted by extraordinary and compelling reasons, which are not statutorily detailed.
>
> Yet, those reasons may not be totally without definition. As we recognized in *McCoy,* U.S.S.G. §

5

1B1.13, even though issued before Congress authorized defendant-filed motions, "remains helpful guidance even when motions are filed by defendants." 981 F.3d at 282 n.7. Both before and after the change authorizing defendant-filed motions, § 3582(c) continues to describe the substantive ground the same — that a court may reduce a sentence "if it finds that ... extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). And U.S.S.G. § 1B1.13 describes "*what should be considered* extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." U.S.S.G. § 1B1.13 background (emphasis added) (internal quotation marks omitted). With respect to medical conditions, such reasons include that "[t]he defendant is suffering from a terminal illness" or "[t]he defendant is ... suffering from a serious physical or medical condition." U.S.S.G. § 1B1.13 cmt. 1(A)(i), (ii). So while U.S.S.G. § 1B1.13 is not applicable to *defendant-filed* motions under § 3582(c), it defines, in the medical context, the same substantive term that applies to *BOP-filed* motions. One might reasonably believe therefore that the term "extraordinary and compelling reasons" will be defined the same for *defendant-filed* motions.

In any event, if a court finds that a defendant has demonstrated extraordinary and compelling reasons, it is still not required to grant the defendant's motion for a sentence reduction. Rather, it must "consider[ ]" the § 3553(a) sentencing factors "to the extent that they are applicable" in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment. 18 U.S.C. § 3582(c)(1)(A). Those factors include "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; "the need to avoid unwarranted sentence disparities"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with ... training, medical care, or other correctional treatment in the most effective manner." *Id.* § 3553(a).

The compelling and extraordinary reasons pressed by Ms. Martin, namely age, health, and completion of a "majority" of her sentence do not meet the standard. She says she has experienced a serious deterioration of health because of the aging process and

meets either the BOP criteria or the guideline definition for "elderly medical." Her ailments, however, are not such as to constitute "serious" deterioration and she is not incapable of functioning in a correctional facility. As she points out, the hearing loss ought to be ameliorated by hearing aids which have long been recommended (and should promptly be provided).

Perhaps if she were still subject to the life sentence initially imposed, the severity of the sentence might supply the needed measure of compelling reason for some reduction. But she obtained a significant reduction to 360 months years ago.

Section 404

The Fair Sentencing Act of 2010 was signed into law on August 3, 2010. It did not apply to those sentenced before its effective date. The First Step Act was adopted in 2018, and provides that, notwithstanding *Dorsey v. United States,* 567 U.S. 260 (2102), certain persons may seek a retroactively reduced sentence. Section 404(b) provides: "A court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." Section 404(a) defines a "covered offense" as a violation of a federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act that was committed before August 3, 2010.

Section 2 of the Fair Sentencing Act altered the quantity threshold for the mandatory minimums in 21 U.S.C. § 841, and Section 3 eliminated the mandatory minimum for simple possession. In *United States v. Wirsing*, 943 F.3d 175, 185-86 (4th Cir. 2019), the United States Court of Appeals for the Fourth Circuit concluded that a person is eligible if he was sentenced under 21 U.S.C. § 841(a) and (b)(1)(A)(iii) or (B)(iii).  In *United States v. Gravatt*, 953 F.3d 258, 262-64 (4th Cir. 2020), the Fourth Circuit held that a defendant remains eligible under the Act even if the conspiracy for which he was convicted encompassed distribution of both cocaine powder and crack cocaine.

 Ms. Martin is eligible to seek relief, and she contends that the court should exercise its discretion to reduce the sentence because she poses a "negligible" risk of recidivism and because she would face a "substantially" lower statutory and guideline range if sentenced today, because her prior conviction no longer qualifies as a felony drug offense and the guidelines would be 292-365 months.  She posits that a court would vary below those guidelines to the sentence she has already served.

The Government does not agree that Ms. Martin is eligible for relief because her criminal activity involved substances that were not involved in the statutory changes as well as a quantity of cocaine base  that is still over the threshold necessary for the mandatory minimum (280 grams, increased from 50 grams).  It

recognizes, however, that the Fourth Circuit ruled otherwise in *United States v. Wirsing*, 943 F.3d 175 (4th Cir. 2019). It also argues that the statutory enhancement still applies because the First Step Act, which reduced the 20-year mandatory minimum to 15 years, and altered the prior convictions that qualify for enhancement, is expressly non-retroactive. Finally, the Government argues that, based on the factors in 18 U.S.C. § 3553(a), the court should deny relief. It emphasizes the harm to the community, potential violence due to the presence of firearms, and the large quantities of controlled substances. It contends that the guideline range remains at 360 months to life, based on the equivalency tables.

Ms. Martin's reply takes issue with several aspects of the Government's opposition, but does not explicitly challenge the guideline range as 360 months to life. She does argue that the amount of drugs and her role which drive the range to that level should not be overemphasized. She again points to her minimal criminal history, the absence of violence, personal lack of a firearm, low risk of recidivism, "impeccable record of rehabilitation," and the need to avoid unwarranted disparities compared to today's sentences. She seeks a reduction to 240 months.

Ms. Martin has already obtained a reduction in her sentence to the bottom of the guidelines. At the time, her record of

9

rehabilitation was taken into account.  Since then, she has continued on that road and performed well on home confinement. She is now 74 years old and, while not justifying compassionate release, has health issues that make it less likely that she continues to be a danger to the community.  Sentencing factors often point in opposing directions—the seriousness of the offense in this case justified the harsh words of the sentencing judge; the need to protect the public and to deter Ms. Martin and others also support a very lengthy sentence.  Disparity is a difficult concept, normally applied to co-defendants and those sentenced contemporaneously.  Here, Ms. Martin tries to compare her sentence to those who might be before a court for initial sentencing today, a difficult hypothetical that is far from apt.  She still is the most culpable of those involved in this conspiracy and, despite her minimal criminal history, should serve a longer sentence than those less involved.

A reduction to 276 months (23 years) appropriately balances those factors.  A separate order and an amended judgment will be entered.

/s/
DEBORAH K. CHASANOW
United States District Judge